UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ASHLEIGH PRUELL and AMY GORDON, on behalf of themselves and all other employees similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARITAS CHRISTI, CARITAS CHRISTI NETWORK SERVICES, INC., CARITAS CARNEY HOSPITAL, INC., CARITAS GOOD SAMARITAN MEDICAL CENTER, INC., CARITAS HOLY FAMILY HOSPITAL, INC., CARITAS NORWOOD HOSPITAL, INC., CARITAS SOUTHWOOD HOSPITAL, INC., CARITAS ST. ELIZABETH'S MEDICAL CENTER OF BOSTON, INC., CARITAS ST. JOHN OF GOD HOSPITAL, INC., NORWOOD HOSPITAL, SAINT ANNE'S HOSPITAL CORPORATION, RALPH DE LA TORRE, M.D., and RICHARD KROPP,<br><br>Defendants. | CIVIL ACTION NO.  09-CV-11722 GAO |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS ALL STATE LAW CLAIMS

Defendants[1] submit this Memorandum of Law in support of their Motion to Dismiss all counts of the complaint that Ashleigh Pruell and Amy Gordon (together, "Plaintiffs") originally filed in Massachusetts Superior Court for Suffolk County ("Complaint").[2]  As chronicled in a website that Plaintiffs' Counsel maintains, www.hospitalovertime.com, this lawsuit is part of a far-reaching campaign that the law firm of Thomas & Solomon LLP has launched against hospitals around the country.  That campaign has included the filing of a multitude of cookie-cutter complaints, including ten lawsuits filed in the Massachusetts state and federal courts in early September 2009, which are grounded in speculation

---

[1] The present motion is submitted on behalf of all defendants in the above-captioned action, including Caritas Christi, Caritas Christi Network Services, Inc., Caritas Carney Hospital, Inc., Caritas Good Samaritan Medical Center, Inc., Caritas Holy Family Hospital, Inc., Caritas Norwood Hospital, Inc., Caritas Southwood Hospital, Inc., Caritas St. Elizabeth's Medical Center of Boston, Inc., Caritas St. John of God Hospital, Inc., Norwood Hospital, Saint Anne's Hospital Corporation, Ralph de la Torre, M.D., and Richard Kropp (together, "Defendants" or "Caritas").

[2] Defendants removed the Massachusetts Superior Court action to this Court on October 16, 2009.  Defendants' present motion to dismiss is limited to the claims in this lawsuit, which were originally asserted in the Massachusetts Superior Court action and does not address the separate but related claims filed by the same plaintiffs in this Court on September 3, 2009, pending as docket no. 09-cv-11466 (GAO).  Defendants' Motion to Consolidate the two actions is pending.

and devoid of allegations of any specific facts.[3] While the complaints in each case allege broadly and in prolix fashion that each of the hospital defendants "defrauded" employees by making them work during meal breaks and failing to pay for pre-liminary and postliminary work and mandatory training, they do not plead a single underlying allegation of fact. The paucity of Plaintiffs' allegations is demonstrated by Plaintiffs' counsel's use of virtually identical language to describe their claims against each of a number of healthcare systems they have sued in Massachusetts and elsewhere in the country. Not content to simply allege conclusory wage and hour claims, Plaintiffs, without a whisper of additional factual basis – concoct *quantum meruit*, conversion, promissory estoppel and other such claims, based on the same hollow allegations.

Despite its length and numerous counts, Plaintiffs' Complaint offers nothing more than formulaic recitations of the bare elements of the causes of action they assert in place of factual allegations to support their claims. This alone mandates dismissal of Plaintiffs' claims. Even if the Court is inclined to look beyond these pleading deficiencies, Plaintiffs' claims suffer additional and fatal legal flaws. Plaintiffs' statutory claims fail because the statutes they state on their face that they do not apply to employees of hospitals. Plaintiffs' derivative common law claims fail because they are preempted by state statutes. Finally, Plaintiffs' count for "equitable estoppel" asserts a cause of action that simply does not exist. Plaintiffs' Complaint fails to state a single viable claim, and thus the Court should dismiss the state law claims in their entirety.

---

[3] In addition to the ten nearly identical cases filed in Massachusetts, Plaintiffs' counsel has filed seven lawsuits in Pittsburgh and five lawsuits in New York. *See Taylor v. Pittsburg Mercy Health Sys.*, No. 09-006476 (Allegheny Cty. Pa., filed Apr. 2009); *Taylor v. Pittsburg Mercy Health Sys.*, No. 09-cv-0377 (W.D. Pa., filed Mar. 2009); *Camesi v. Univ. Pittsburg Med. Ctr.*, No. 09-006470 (Allegheny Cty. Pa., filed Apr. 2009); *Camesi v. Univ. Pittsburg Med. Ctr.,* No. 09-cv-0085 (W.D. Pa., filed Mar. 2009); *Kuznyetsov v. West Penn Allegheny Health Sys.*, No. 09-006480 (Allegheny Cty. Pa., filed Nov. 2008); *Kuznyetsov v. West Penn Allegheny Health Sys.*, No. 09-cv-0379 (W.D. Pa. filed Mar. 2009); *Gordon v. Kaleida Health*, No. 08-CV-378 (W.D.N.Y., filed May 2008); *Hinterberger v. Catholic Health Sys., Inc.*, No. 08-CV-1221 (W.D.N.Y., filed May 2008); *Hamelin v. Faxton-St. Luke's Healthcare*, No. 08-cv-1219 (N.D.N.Y., filed Nov. 2008); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, No. 08-cv-1220 (N.D.N.Y., filed Nov. 2008); *Fengler v. Crouse Health Found., Inc.*, 08-cv-1221 (N.D.N.Y., filed Nov. 2008).

## Background

### I.  CARITAS CHRISTI

Caritas Christi is a not-for-profit, community-based hospital network that operates six hospitals in the greater Boston area and employs approximately 12,000 individuals. The Caritas hospitals collectively hold 1,552 beds and include Carney Hospital in Dorchester, Good Samaritan Medical Center in Brockton, Holy Family Hospital in Methuen, Norwood Hospital in Norwood, Saint Anne's Hospital in Fall River, and St. Elizabeth's Medical Center in Brighton. Plaintiffs are former employees of Caritas who were paid on an hourly basis.

### II.  THE COMPLAINT

On September 10, 2009, Plaintiffs filed a thirteen-count complaint in Suffolk Superior Court (docket entry 1, Ex. 1). In their Complaint, Plaintiffs contend that they were wrongfully deprived of remuneration in three ways. First, they claim that Caritas automatically deducted time from their total hours worked for meal breaks even when they performed work during a meal break. Complaint ("Compl."), ¶¶ 73-88. Second, they claim that unnamed "policies, practices and/or [unidentified aspects of Caritas'] time recording system" prevented them from recording preliminary and postliminary work performed at the start and conclusion of their shifts. Compl., ¶¶ 93-96. Third, they claim that Caritas failed to pay them for time spent attending "compensable training programs." Compl., ¶¶ 97-101. Plaintiffs claim that this alleged failure to pay wages constitutes a breach of unidentified promises, as well as a violation of the Massachusetts Payment of Wages Act, Mass. Gen. Laws ch. 149, § 148 (the "Wage Act") (Count I), and the overtime provisions of the Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151, § 1A ("Minimum Wage Law") (Count II). In addition, Plaintiffs assert common law claims for breach of contract (Counts III, IV, and V), *assumpsit* (Count VI), *quantum meruit*/unjust enrichment (Count VII), fraud (Count VIII), negligent misrepresentation (Count IX), equitable estoppel (Count X), promissory estoppel (Count XI), and conversion (Count XII), as well as a claim that Caritas failed to keep accurate records (Count XIII).

## Argument

**I.   PLAINTIFFS' COMPLAINT FAILS TO ASSERT FACTS SUFFICIENT TO MEET THE APPLICABLE PLEADING STANDARDS.**

All claims Plaintiffs assert in their Complaint are minimally subject to the pleading standard established in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). In addition, the most scandalous claims in Plaintiffs' Complaint, that Defendants engaged in fraud or intentional misrepresentation toward Caritas employee – are subject to the heightened requirements of Rule 9 and must be pled with particularity. Despite spanning 29 pages and almost 200 numbered paragraphs, Plaintiffs' Complaint is devoid of substance. Plaintiffs' allegations primarily consist of conclusory assertions that parrot the legal elements of one or more of the 13 counts of the Complaint, strung together with rhetorical flourish and grandstanding. Such allegations fail to state any viable claim under the pleading established by *Twombly* and *Iqbal*, much less the requirements of Rule 9. The Court should therefore dismiss the Complaint in its entirety.

**A.   Plaintiffs' Factual Allegations Are Insufficient to Lend Credibility to Their Legal Claims, As *Twombly* and *Iqbal* Require.**

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Twombly* and *Iqbal*, the Supreme Court announced and refined a new standard by which to measure a plaintiff's compliance with that requirement. In order to survive a motion to dismiss, a complaint must set forth factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While the Court acknowledged that "detailed factual allegations" are not necessary for a complaint to survive a motion to dismiss, a complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations omitted). This refined standard is intended to prevent "a plaintiff with a largely groundless claim [from] be[ing] allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550

U.S. at 558 (citations and quotations omitted).  In light of the Supreme Court's guidance, "two underlying principles guide [] assessment of the adequacy of the plaintiffs' pleadings." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009).  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and legal conclusions couched as factual allegations need not be given any credence whatsoever by the court.  *Id.*; *Twombly*, 550 U.S. at 555.  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Maldonado*, 568 F.3d at 268 (emphasis added).

As demonstrated below, none of Plaintiffs' thirteen counts satisfy these pleading requirements.  If Plaintiffs had been subject to any identifiable legal wrong, they might have shared with the Court a few specifics about their own compensation or experiences as employees of Caritas.  Instead, Plaintiffs' Complaint consists of only vague references to alleged violations of statutes and common law, and is almost devoid of substantive factual allegations that would ground a plausible claim for relief.  Indeed, on the same day that they filed the Complaint in this matter, Plaintiffs' counsel filed substantially identical complaints against every major hospital system in Massachusetts, not pleading facts but reciting the same litany of unadorned, boilerplate allegations in every case.[4]  To paraphrase Shakespeare, Plaintiffs' allegations are full of sound and fury, but without factual background sufficient to demonstrate "more than a sheer possibility that [the] defendant has acted unlawfully," they signify nothing.  *See Iqbal*, 129 S.Ct. at 1949.

### 1. Plaintiffs' Statutory Wage Claims Lack Sufficient Factual Support.

Counts I and II of Plaintiffs' Complaint, which assert claims for failure to pay wages and overtime pursuant to the Wage Act and the Minimum Wage Law, fail principally because Caritas'

---

[4] *See Manning v. Boston Med. Ctr.,* Civil Action No. 09-CV-11724-NMG (removed from Suffolk County Superior Court on October 16, 2009); *Hamilton v. Partners Healthcare Sys.,* Civil Action No. 09-CV-11725-DPW (removed from Middlesex County Superior Court on October 16, 2009); *Cavallaro v. UMass Mem'l Healthcare Inc.*, Civil Action No. 09-CV-40181-FDS (removed from Worcester County Superior Court on October 16, 2009); and *Woolfson v. Caregroup, Inc.*, Middlesex Superior Court Civil Action No. 2009-03542.  In each of these cases, Plaintiffs' counsel filed class action complaints against various institutions in a healthcare system, the Chief Executive Officer of the system, and the senior-most human resources officer of the system, each containing a nearly verbatim recitation of the same 195 numbered paragraphs against each group of defendants and each asserting the same 13 counts that they assert against Caritas in this matter.

employees are exempted from coverage of both statutes, as discussed in Part II below. Even if Plaintiffs were not exempted from coverage, their statutory claims would fail because Plaintiffs have not pled any facts to lend plausibility to their hollow assertion that Caritas breached its supposed statutory obligations.

To succeed on a claim under the Wage Act (Count I), Plaintiffs must show that Caritas failed to pay for all hours worked, and to succeed on a claim under the Minimum Wage Law (Count II) Plaintiffs must show that they worked more than forty hours per week without receiving overtime pay. Plaintiffs do not allege facts to support their assertion regarding either of Caritas' alleged statutory violations. Indeed, they allege nothing regarding their employment, failing even to specifically allege that they ever worked for Caritas. *See* Compl., ¶ 60. They similarly fail to allege what positions they held, in which facilities they worked, or during what time period they were employed.[5] Most importantly, the Court is left to guess what their pay rates were and what hours they have not been paid. Without such factual allegations, there is nothing to raise their complaint "above the speculative level," as is necessary to survive a motion to dismiss under *Twombly*.

Courts applying *Twombly* in the analogous context of Fair Labor Standards Act ("FLSA") cases have held that to substantiate violations of minimum wage and overtime requirements, a complaint must "at least approximately[] allege the hours worked for which . . . wages were not received" because "simply stating that a Plaintiff was not paid for overtime work does not sufficiently allege a violation" of wage and hour laws. *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628, 630 (S.D.N.Y. 2007). For example, an employee cannot establish a minimum wage violation simply by alleging that he was not paid at his regular rate of pay for a number of hours. Instead, he must allege facts that if proven would demonstrate that as a result of that unpaid time, his effective rate of pay during some period dropped below the statutory minimum. *See*, *e.g.*, *Bailey v. Border Foods Inc.*, 2009 WL 3248305, *2 (D. Minn. 2009) (granting motion to dismiss wage claims because plaintiffs "failed to identify their hourly pay rates

---

[5] This is of particular concern because several of the purported "consent to join" forms that have been filed in the federal action (pending as docket number 09-11466 (GAO)), are signed by individuals as to whom Caritas has no record, and who thus appear never to have worked for Caritas.

6

. . . or any facts [concerning hours worked and paid] that would permit the Court to infer that Plaintiffs actually received less than minimum wage"). Such specific allegations are particularly important here because of the remarkably broad swath of employees whom Plaintiffs seek to sweep into a putative class.[6] Plaintiffs' suggestion that all of these employees performed some unspecified activities for an unstated amount of time for which they were not paid is the type of aspirational pleading that fails to meet the *Twombly* standard and demands dismissal.

That Plaintiffs fail to allege facts regarding their positions, compensation, and hours of work is merely exemplary of the ways in which their statutory claim fails to meet the *Twombly* standard. For example, Plaintiffs make the conclusory assertion that they were not compensated for preliminary and postliminary work, but they fail to provide any description of the uncompensated work they claim to have performed. Compl., ¶¶ 93-94. They go on to allege in conclusory fashion that they attended "compensable training programs," without specifying the nature of the training programs attended, where they occurred, the voluntariness or job-relatedness of these training programs, or any other allegation creating a plausible inference that these activities may be compensable.[7] Compl., ¶¶ 97-98. Each and every one of these allegations should be disregarded as legal conclusions "couched as [] factual allegation[s]." *Twombly*, 550 U.S. at 555. Once these conclusions are set aside, Plaintiffs' remaining asseverations present no allegations of fact whatsoever to render their statutory claims for allegedly

---

[6] Plaintiffs identify more than forty positions that they claim to be at issue in this case but provide no basis for a contention that incumbents in all of the listed positions have performed work for which they were not paid. *See* Compl., ¶ 89. Moreover, as will be detailed in Defendants' Motion to Strike Putative Class Action Claims, which Caritas intends to file shortly, the incumbents in those positions forty-plus work at multiple rates and, pursuant to the various collective bargaining agreements in effect at Caritas' multiple facilities, are subject to a variety of interwoven rules concerning their rates of pay and hours of work. Thus, Plaintiffs' empty Complaint is particularly egregious where they seek to represent numerous categories of employees all of who, so far as the Complaint pleads, are subject to different working terms and conditions.

[7] Not all "training" is compensable work. Whether employees must be paid for training activities depends on the facts and circumstances of the particular training. *See* 29 C.F.R. §§ 785.27-785.32 (describing types of training that are compensable and types that are not).

unpaid training time and preliminary and postliminary work plausible.[8]  These claims, therefore, must be dismissed.[9]

### 2. Plaintiffs' Contract Claims also Fail.

Plaintiffs' implied and express contract claims are also factually unsupported.  Even under the more lenient standard that preceded *Twombly*: "To state a claim for breach of contract, a plaintiff [was required to] allege, at a minimum, that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." *Moghaddam v. Dunkin' Donuts, Inc.*, 295 F. Supp. 2d 136, 139 (D. Mass. 2003) (quotations omitted).  Plaintiffs' Complaint asserts two separate claims for breach of some unidentified express contract (Counts III and IV), as well as a claim for breach of an implied contract (Count V).  Plaintiffs, however, do not identify any express or implied contract with Caritas, and instead merely beg the question with their conclusion that "[b]y entering into an employment relationship, defendants and Plaintiffs and Class Members entered into a contract for employment, including implied contracts and express contracts." Compl., ¶ 106.  Plaintiffs neglect even to specify even whether they allege an oral or written contract.  They do not describe the circumstances under which the contract allegedly was entered into, the parties to this agreement, who negotiated the alleged contract, or even the specific terms they claim were breached.  Plaintiffs do not even specify whether the alleged contracts are individual agreements with Caritas or

---

[8] As another glaring example of Plaintiffs' failure to meet the *Twombly* pleading standard, Plaintiffs attribute a number of statements and actions to "defendants' managers," again in conclusory fashion without providing any information as to the identity of those individuals, whether they actually constitute management, or when and to whom such statements were allegedly made. *See*, *e.g.*, Compl., ¶ 84 ("Defendants' management have [sic] repeatedly observed Plaintiffs and Class Members working through their unpaid meal breaks"); Compl., ¶ 85 ("Plaintiffs and Class Members had conversations with defendants' managers in which they discussed how they were working through their meal periods").

[9] Plaintiffs also purport to assert a claim for "failure to keep accurate records," in which they presumably refer to the recordkeeping requirements of Mass. Gen. Laws ch. 151, § 15.  *See* Compl., ¶ 192-94 (Count XIII).  This statutory section requires employers to produce to the Massachusetts Attorney General upon request a "record of the name, address and occupation of each employee, of the amount paid each pay period to each employee, of the hours worked each day and each week by each employee."  Section 15 provides rights to employees only to the extent it permits them to request their own records.  *See id.*  Plaintiffs have not alleged that they requested any records from Caritas, much less that Caritas failed or refused to produce them, and they have not pled a plausible claim under that statute.

some broader agreements.[10]  Likewise, Plaintiffs fail to explain the basis of their implied contract claim. They vaguely contend that an implied contract arose from their "on-going dealings and course of conduct" with Caritas.  Compl., ¶ 115.  They entirely fail, however, to describe this supposed course of dealing or conduct, omitting any account of the type of conduct, the timing of the conduct, or the individuals who allegedly engaged in the conduct at issue.  Without any substantiation of these legal conclusions masquerading as allegations of fact, Plaintiffs have not pled facts sufficient to give rise to a plausible inference that any contract existed, much less that any Defendant breached such an agreement.

### 3. Plaintiffs' Fraud and Conversion Claims Fail Because They Do Not Allege the Necessary State of Mind.

Counts VII and XII of the Complaint purport to assert claims for fraud and conversion.  In Massachusetts, a claim for conversion "cannot be maintained without proof that the defendant . . . did some positive wrongful act with the intention to appropriate the property to himself." *Grande v. PFL Life Ins. Co.*, 2000 WL 1476676, *4 (Mass. App. Div. 2000) (quoting *Spooner v. Manchester*, 133 Mass. 270, 273 (1882)) (emphasis added).  Similarly, in Plaintiffs' fraud claim, "intent, or state of mind, of the defendant at the time the promises [that are the basis of the fraud claim] were made becomes the relevant issue." *Bolen v. Paragon Plastics, Inc.*, 754 F. Supp. 221, 226 (D. Mass. 1990).[11]  Plaintiffs offer numerous hollow legal conclusions with regard to Defendants' supposed mental state, but they provide no factual allegation remotely sufficient to ground an inference that these scandalous charges are plausible.  For example, they allege that Defendants "at all times intended to violate applicable

---

[10] To the extent Plaintiffs contend that the contract referred to exists separate and distinct from the various collective bargaining agreements in place at Caritas' facilities, they also fail to so allege it.  To the extent that Plaintiffs' contract claims do refer to such collective bargaining agreements, the claims are preempted as will be described in Defendants' forthcoming Motion to Strike Putative Class Action Claims.

[11] To succeed on a cause of action for fraud under Massachusetts law, a plaintiff must "prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage." *Bolen*, 754 F. Supp. at 226; *Barrett Assoc., Inc. v. Aronson*, 346 Mass. 150, 152 (1963).  Plaintiffs assert that Caritas misrepresented facts concerning whether Plaintiffs "would be paid legally" and "would be paid for all compensable time." *See* Compl., ¶¶ 146-47.  Statements with regard to future conditions or occurrences, like Defendants' alleged statements regarding Plaintiffs' future pay, are not actionable as fraud under Massachusetts law unless "at the time the defendant made the statement, he or she did not intend to carry out the promise." *Bolen*, 754 F. Supp. at 226.  Plaintiffs do not allege that Defendants made any statement that would meet this requirement.

Massachusetts laws by failing to pay Plaintiffs and Class Members for all compensable time." Compl., ¶ 149. They further allege that Defendants "deliberately misrepresented" the legality of their pay practices and that they "knowingly, unlawfully and intentionally took, appropriated and converted . . . wages." Compl., ¶¶ 128, 145.

The Supreme Court's analysis in *Iqbal* provides guidance with respect to claims like these that turn on a defendant's supposed state of mind. The Court instructed that pleadings fail to state a claim for such a cause of action if they do not "contain any factual allegation sufficient to plausibly suggest [the alleged] state of mind." 129 S.Ct. at 1952. Because Caritas is not a natural person, it can only be held liable for intentional torts where a particular agent responsible for the tortious action had the requisite state of mind.[12] Here, Plaintiffs make no factual allegation about any identifiable person's state of mind, nor do they plead facts that would lend plausibility to any other element of their fraud and conversion claims. Plaintiffs' reckless and scandalous allegations that Caritas has deliberately deprived more than forty categories of workers of hourly compensation is not supported by any factual allegations at all and falls grossly short of the *Twombly* and *Iqbal* standard.

### 4. Plaintiffs' Fraud and Negligent Misrepresentation Claims Fail To Meet the Heightened Pleading Standard Under Rule 9.

Even if Plaintiffs had pled their fraud and negligent misrepresentation claims with factual allegations sufficient to survive scrutiny under *Twombly*, Plaintiffs fall dramatically short of the heightened pleading standard for such claims imposed by Rule 9. Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud . . . shall be stated with particularity." At a minimum, a plaintiff must identify the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which it was communicated. *See McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980). Claims of negligent misrepresentation also are

---

[12] *See Seelig v. Harvard Co-op. Soc'y*, 355 Mass. 532, 541 (1969) ("A corporation has no mind. While it can be responsible for the tortious acts that require the existence or absence of a certain state of mind if those acts are committed by an employee, the requisite state of mind must necessarily be that of the employee.").

subject to Rule 9(b), requiring "specification of the time, place, and content of an alleged false representation." *See Lindner Div. Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 57 (D. Mass. 1995) (quoting *McGinty*, 633 F.2d at 228, superseded by statute on other grounds). In other words, a plaintiff must plead the "who, what, when, and where" of an alleged fraud or negligent misrepresentation. In addition, a plaintiff must make specific and separate allegations against each defendant. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal because complaint was "bereft of any detail concerning who was involved in each allegedly fraudulent activity" but, instead, "the complaint lumped all the defendants together and [did] not specify who was involved in what activity").

Plaintiffs have not even come close to satisfying their Rule 9(b) pleading obligations. In support of their fraud and negligent misrepresentation claims, Plaintiffs merely assert that:

> 153. Defendants induced Plaintiffs and Class Members to accept employment with defendants by misrepresenting to Plaintiffs and Class Members that they would be fully paid for all compensable time.
>
> 154. There was no reasonable basis for defendants to believe these representations because defendants had a continuing practice of failing to pay their employees for all compensable time, including applicable premium pay. Defendants concealed the fact that they did not pay Plaintiffs and Class Members for all compensable time from Plaintiffs and Class Members. Plaintiffs and Class Members relied upon defendants' representations by performing work and services for defendants. This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations to pay for all hours worked pursuant to the Mass. Gen. Law Ch. 149, §§ 148, 150 and Mass. Gen. Law Ch. 151, §§ 1A, 1B and common law.
>
> 155. As a direct and proximate cause of defendants' fraud and negligent misrepresentations Plaintiffs and Class Members have suffered damages because they were not compensated for all compensable time that they worked both under and in excess of forty [sic] per week.

Compl., ¶¶ 153-155. Plaintiffs fail to identify <u>any</u> of the following elements of a particularized pleading of fraud: the specific content of the representations alleged to be false, who committed the alleged fraud or misrepresentation, when it happened, or where it happened. Nor do Plaintiffs make specific and

11

separate allegations against any defendant in this case. Instead, Plaintiffs' fraud and negligent misrepresentation allegations are exactly the sort of bare, conclusory allegations that the federal courts have roundly and consistently rejected.[13]

### 5. Plaintiffs' Misrepresentation and Estoppel Claims Fail To Identify Any Promise on Which Plaintiffs Could Have Relied.

Plaintiffs' negligent misrepresentation (Count IX), equitable estoppel (Count X), and promissory estoppel (Count XI) claims all fail for lack of any substantive allegation that Defendants made an identifiable representation to anyone regarding the issues raised in the Complaint or any allegation that would tend to make reliance on any representation by Defendants reasonable. The doctrine of equitable estoppel requires a showing that the party asserting the estoppel claim reasonably relied on a material misrepresentation by the opposing party. *See Mimya Hosp. Inc. v. U.S. Dep't of Health & Human Servs.*, 331 F.3d 178, 182 (1st Cir. 2003). Plaintiffs' negligent misrepresentation and promissory estoppel claims require nearly the same showing as their estoppel claim. "In order to recover for negligent misrepresentation, a plaintiff must prove that the defendant, in the course of his business, made a false representation of material fact for the purpose of inducing the plaintiff to rely upon it, and that the plaintiff did rely upon the representation as true, to his damage." *See Kitner v. CTW Transp., Inc.*, 53 Mass. App. Ct. 741, 749 (2002). Similarly, promissory estoppel requires a showing that Plaintiffs reasonably relied upon a promise made by Defendants. *Hall v. Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 94 (1987).

Plaintiffs make no effort to describe any representation or misrepresentation by any defendant that could ground their equitable estoppel, negligent misrepresentation or promissory estoppel claims. Instead, they parrot the legal elements of these legal claims with the hollow assertion that "defendants deliberately misrepresented to plaintiffs that they were being properly paid for compensable time, even

---

[13] Even where the pleadings concern "conditions of a person's mind" that may be alleged "generally" pursuant to Rule 9, a plaintiff may not "plead the bare elements of his cause of action, affix the label 'general allegation' and expect his complaint to survive a motion to dismiss." *Iqbal,* 129 S.Ct. at 1954.

though Plaintiffs were not receiving pay for all compensable time." Compl., ¶ 145. Similarly, Plaintiffs do nothing to provide factual allegations that would allow the Court to conclude that it was plausible that Plaintiffs reasonably relied on any such representation or misrepresentation. Instead, Plaintiffs again beg the question and state, "Plaintiffs and Class Members justifiably relied on the misrepresentations" and "[t]his reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable Massachusetts law." Compl., ¶ 150. They fail to provide any information whatsoever about who made the alleged representations, to whom they were made, or whether the context in which they were made was such that that reliance upon the statements may have been reasonable. Because of the conclusory nature of these allegations, Plaintiffs' equitable estoppel, negligent misrepresentation, and promissory claims fail to meet the *Twombly* standard.

### 6. Plaintiffs Also Fail to Substantiate Their Remaining Equitable Claims.

Plaintiffs assert two other derivative common law theories of liability under the headings of money had and received (Count VI), and *quantum meruit* (Count VII), both premised on the theory that Plaintiffs are due some payment under principles of equity. To establish a cause of action for money had and received, Plaintiffs must show that they are entitled to recover money that should not in justice be retained by Defendants and that in equity and good conscience should be paid to Plaintiffs. *Stone & Webster Eng'g Corp. v. First Nat'l Bank & Trust Co. of Greenfield*, 345 Mass. 1, 7 (1962). *Quantum meruit* applies where "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Salamon v. Terra*, 394 Mass. 857, 859 (1985). Recovery on a theory of *quantum meruit* requires proof that the plaintiff conferred a measurable benefit upon the defendant, and that the defendant accepted the benefit amid circumstances in which a reasonable person would have expected to compensate the plaintiff.[14] *Bolen*, 747 F. Supp. at 106-07. Plaintiffs plead their alleged

---

[14] Massachusetts courts often treat *quantum meruit* as synonymous with a cause of action for implied contract. *See, e.g.*, *Salamon*, 394 Mass. at 859 (using terms quasi-contract, contract implied in law, and *quantum meruit* interchangeably to represent cause of action for "an obligation created by law for reasons of justice") (quotations omitted). Neither *quantum*

entitlement to relief under these equitable doctrines only in the most general and conclusory terms, reciting the legal elements of such a claim by asserting that "Defendants have received . . . financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit." Compl., ¶ 136. Moreover, Plaintiffs base their equitable claims upon their asseverations that Caritas failed to pay them wages; those allegations are themselves insufficiently pled. The Court should therefore dismiss Plaintiffs' claims for *quantum meruit* and money had and received.

### B. Plaintiffs' Claims Against the Individual Defendants Fail to Satisfy the *Twombly* and *Iqbal* Pleading Standards.

Plaintiffs' claims against the two individual defendants, Ralph de la Torre, Caritas' President and CEO, and Richard Kropp, Caritas' Senior Vice President for Human Resources, also are plainly insufficient. The Complaint surmises that these individuals are liable to Plaintiffs and the class they purport to represent because these individuals – apparently by virtue of assumptions Plaintiffs make from their job titles – have "the authority to . . . make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll and benefits," as well as authority to "make decisions that concern the policies defendants adopt and the implementation of those policies." Compl., ¶¶ 21-29, 38-52. In a twist of circular logic, Plaintiffs reason that because these individuals have "authority" to conduct these activities, they must have been "actively involved" in the decisions at issue in this case. Compl., ¶¶ 31-35, 53-58. These layered, conclusory allegations are not entitled to a presumption of truth, and the claims against the individual defendants cannot survive. *See Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court dismissed claims against the government officials individually named in a complaint because the pleadings contained insufficient facts to tie them to the wrongdoing alleged. *See* 129 S.Ct. at 1952. Here, Plaintiffs identify no facts that tie the individual defendants to any alleged wrongdoing; instead, they merely rely on their titles at Caritas

---

*meruit* nor implied contract can be invoked as a cause of action where an express contract governs the parties' relations. *See Boswell v. Zeyphr Lines Inc*., 414 Mass. 241, 250 (1993). Plaintiffs fail to plead the lack of an express contract – in fact they specifically assert that their employment relationship with Caritas is governed by an express contract. Compl., ¶ 107. This is yet another reason that these claims fail on their face.

14

to infer culpability.[15]  Plaintiffs' counsel plied this tactic of making prolix but substanceless allegations against a corporate defendant's senior officers before, and it was rejected for failing to meet the *Twombly* and *Iqbal* standard.[16]  *See Tracy v. NVR, Inc.*, 2009 WL 3153150, at * 5-6 (W.D.N.Y. 2009) (citing *Iqbal* and denying motion to amend complaint to add individual defendants as futile because "upon careful analysis, the complaint asserts little more than because [one] was Chairman and [another] was President of [the corporate defendant], then each must have had authority to take the actions that comprise the [test for employer status under the FLSA], and that because each had the authority to take those actions, then each must have in fact taken those actions").[17]  There is no reason that the result should be different here, and the Court should dismiss Dr. de la Torre and Mr. Kropp from this action.

**II.   PLAINTIFFS' STATUTORY CLAIMS FAIL BECAUSE CARITAS' EMPLOYEES ARE SUBJECT TO THE HOSPITAL EXEMPTION.**

Even if Plaintiffs had pled facts sufficient to substantiate a claim under the Wage Act or the Minimum Wage Law, that claim would fail because Caritas' employees are exempted from coverage under those statutes.  Plaintiffs' failure to appreciate these state law exemptions is further evidence of their disregard for rules of pleading, and proof that their campaign against Caritas is part of the assault Plaintiffs' counsel have launched against hospitals around the country.  The Massachusetts Minimum Wage Law states that its overtime provisions "shall not be applicable to any employee who is employed . . . in a <u>hospital</u>, sanitorium, convalescent or nursing home, infirmary, rest home or charitable home for the aged."  Mass. Gen. Laws ch. 151, § 1A(16) (emphasis added).  The statute's industry exemptions, including the hospital exemption, are premised on the rationale that jobs within the

---

[15] Apropos of this lack of specificity, Plaintiffs' counsel have crafted nearly <u>identical</u> allegations against individual defendants working for four other hospital systems in this District and numerous hospital systems elsewhere.  *See supra*, notes 3, 4.

[16] Indeed, Plaintiffs' factual allegations regarding the individual defendants in this action bear a striking resemblance to the factual allegations rejected as conclusory in the *Tracy* case, which concerns individuals working in an entirely different industry.  *See Tracy*, 2009 WL 3153150, at * 5-6.

[17] In *Tracy*, the District Court later also rejected the plaintiffs' attempt to pursue claims against a senior human resources officer as an individual defendant.  The court held that the plaintiffs' "boilerplate allegations that [the HR officer met] the various prongs of the economic reality test stated solely upon information and belief and without any supporting details" were "insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA." 2009 WL 3647862 (W.D.N.Y., filed Nov. 5, 2009) (attached as Exhibit A).

exempted institutions "may require continuous service by a particular person beyond the confines of an eight hour schedule." *Fitz-Inn Auto Parks, Inc. v. Comm'r of Labor & Indus.*, 350 Mass. 39, 42 (1965).[18] There can be no doubt that the exemption found in §1A(16) applies in this case. Caritas' facilities constitute hospitals under any definition, and Plaintiffs affirmatively assert as much in their Complaint. *See* Compl., ¶ 3 ("Caritas Christi is an enterprise engaged in the operation of a hospital and/or the care of the sick . . .").

Likewise, Mass. Gen. Laws ch. 149, § 148 states that "[the Wage Act] shall not apply to an employee of a hospital which is supported in part by contributions from the commonwealth or from any city or town, nor to an employee of an incorporated hospital which provides treatment to patients free of charge, or which is conducted as a public charity. . . ." By the plain language of this section, Caritas' employees are triply exempted from coverage because Caritas is supported in part by public funds, provides treatment to patients free of charge, and is a registered public charity.[19] Plaintiffs' cookie-cutter pleadings, recycled from lawsuits in New York and Pennsylvania, simply do not work in Massachusetts. Plaintiffs' statutory claims must, therefore, be dismissed.

### III. THE MASSACHUSETTS WAGE ACT AND MINIMUM WAGE LAW PREEMPT PLAINTIFFS' DERIVATIVE COMMON LAW CLAIMS

Plaintiffs' numerous common law claims, all of which derive from and improperly duplicate Plaintiffs' Wage Act and Minimum Wage Law claims, fail because state wage statutes preempt common law claims that are grounded in the same facts as the statutory claims. Common law claims founded on

---

[18] While there are no reported court decisions regarding the hospital exemption, the Division of Occupational Safety ("DOS"), which is charged with administering the Minimum Wage Law, opined in a 2001 letter that employees of a drug and alcohol treatment center were exempt from overtime under the provision, provided that the treatment center fell within the definition of a "sanitorium." DOS Op. Ltr. MW-2001-016 (Nov. 19, 2001) (attached as Exhibit B). In that letter, DOS also noted that it understood the treatment center not to be "operating within a hospital," indicating that if it were, the exemption would apply regardless of whether the center met the definition of a sanitorium. *See id.* In addition, DOS has interpreted the similarly worded hotel exemption found in § 1A(12) to "include all workers who work in some aspect of hotel operations . . . within the physical confines of a hotel property." DOS Op. Ltr. MW-2006-001 (Mar. 10, 2006) (attached as Exhibit C). There is no dispute here, and the Complaint, itself, alleges that Caritas is a "hospital."

[19] I.R.S. Publication 78, *Cumulative List of Organizations described in Section 170(c) of the Internal Revenue Code of 1986*, available at http://www.irs.gov/app/pub-78/ (listing Caritas as a public charity eligible to receive tax-deductable charitable donations).

duties that are "wholly the creation of statute" are preempted by the statute. *Sch. Comm. of Boston v. Reilly*, 362 Mass. 334, 338-9 (1972). "Where a statute has been enacted seemingly intended to cover the whole subject to which it relates, including a remedy for its infraction, other provisions of the common law, including such as are remedial in nature, are thereby superseded." *Sch. Comm. v. City of Lowell*, 265 Mass. 353, 356 (1928); *see also Dobin v. CIOView Corp.*, 2003 WL 22454602 at *9 (Mass. Super. Ct. Oct. 29, 2003) (Gants, J.) (where Legislature "has provided a statutory cause of action to an at-will employee who has been discharged for exercising [] statutory rights, there is no need to add a common law remedy"). Indeed, in four recent cases, courts have applied this reasoning and dismissed common law claims that are premised on violations of Massachusetts wage statutes. *See Mouiny,. v. Comm. Flats Dev. Corp.,* No. SUCV-2006-1115-BLS1 (Mass. Super. Ct. Aug. 20, 2008) (Gants, J.), p. 14-15 (attached as Exhibit D); *Hernandez, v. Hyatt Corp.*, No. SUCV-2005-0569-BLS1 (Mass. Super. Ct. May 4, 2009) (Hinkle, J.), p. 8 (attached as Exhibit E); *Godt v. Anthony's Pier 4, Inc.*, No. SUCV-2007-3919-BLS1 (Mass. Super. Ct. Mar. 24, 2009) (Hinkle, J.), p. 8 (attached as Exhibit F); *DePina, et al. v. Marriott Int., Inc.,* No. SUCV-2003-05434-G (Mass. Super. Ct. July 28, 2009) (Henry, J.), pp. 18-20 (attached as Exhibit G).[20] As in this case, the common law claims in *Mouiny*, *Hernandez*, *Godt*, and *DePina* all derived from and improperly duplicated wage claims.[21] In *Mouiny*, then-Superior Court Justice Gants noted that if the plaintiffs prevailed on their wage claim, they would be entitled to restitution, with interest, as well as the remedies in Mass. Gen. Laws ch. 149, § 27C – clearly a situation "[w]here a statute has been enacted . . . to cover the whole subject to which it relates, including a remedy for its infraction" and in which "other provisions of common law, including such as are remedial in

---

[20] Each of these cases alleged violations of the Massachusetts Tip Statute, Mass. Gen. Laws ch. 149, § 152A, which contains the same enforcement scheme and penalties as the Wage Act. *See* Mass. Gen. Laws ch. 149, §§ 27C, 150.

[21] In addition to their wage claims, the plaintiffs in *Mouiny* asserted claims for declaratory judgment, failure to pay wages, restitution, money had and received, equitable restitution, breach of contract, and a request for accounting. *Mouiny*, n.1. The plaintiffs in *Hernandez* asserted a request for declaratory judgment and claims for money had and received, breach of contract, breach of fiduciary duty, conversion, and a request for accounting. In *Godt*, the plaintiffs asserted claims for *quantum meruit*, intentional interference with contractual and/or advantageous relations, breach of contract, breach of the covenant of good faith and fair dealing, conversion and unjust enrichment. *Godt*, p. 1.

nature, are thereby superseded." *Mouiny*, p. 15 (quotation omitted); *see also Hernandez*, p. 8 (dismissing common law claims based on reasoning in *Mouiny*); *Godt*, p. 11 (same). Here, Plaintiffs' common law claims fail for the same reason.[22]

Plaintiffs' common law claims are based on the same alleged facts as their statutory claims – namely, that Caritas failed to pay Plaintiffs and putative class members for all hours worked. Indeed, in their prayer for relief, Plaintiffs' only specific request for damages seeks "an award of the value of Plaintiffs' and Class Members' unpaid wages, including fringe benefits" without any reference to other damages stemming from their common law claims. Further, their request for injunctive relief seeks to enjoin Caritas "from engaging in the aforementioned pay violations."

Plaintiffs' motive in bringing these duplicative claims is clear: they seek to extend the statute of limitations, thereby potentially garnering a larger class of employees and a longer period of time over which to seek damages.[23] The Legislature's intent to preempt common law claims seeking to enforce rights under the state's wage laws is evident from the fact that it promulgated statutes that impose a comprehensive enforcement scheme with specialized remedies, including provisions for multiple damages, and attorneys' fees, alongside a three-year statute of limitations for violations of the Wage Act and a two-year statute of limitations for violations of the Minimum Wage Law. These enhanced statutory remedies cannot be sought in addition to common law claims for single damages over a period longer than the Legislature has established for such wage claims. The Court should not permit Plaintiffs

---

[22] In an analogous context, courts have held that common law counts that depend on establishing a statutory violation of the FLSA are preempted by that statute, on the grounds that the FLSA provides an elaborate enforcement scheme that precludes duplicative common law claims with potentially conflicting remedies or statutes of limitations. *See*, *e.g.*, *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194-195 (4th Cir. 2007) (holding plaintiffs' breach of contract, negligence, and fraud claims precluded by FLSA's exclusive enforcement scheme); *Chen v. Street Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005) (holding that FLSA preempted plaintiffs' negligence claims under New York law). As these courts have recognized, where plaintiffs premise their common law claims on the exact same set of facts as their statutory claims, the statutory scheme preempts the common law claims. The same analysis applies to the dismissal of common law claims based on FLSA preemption in the class action context. *See Anderson*, 508 F.3d at 182; *Sorenson v. CHT Corp.*, 2004 WL 442638, at *1 (N.D. Ill. 2004); *Morgan v. SpeakEasy, LLC*, 2007 WL 2757170, at *1 (N.D. Ill. 2007); *Moeck*, 2006 WL 42368, at *1 (D.N.J. 2006).

[23] The statute of limitations on Plaintiffs' contract claim is six years, and the statute of limitations for Plaintiffs' other common law claims is three years.

to perform an end-run around the Legislature's intent by recasting their statutory wage claims (with their two- and three-year statute of limitations) as contract claims in an attempt to leverage a six-year limitations period.

Because Plaintiffs' common law claims are based on the same factual assertions and seek the same measure of damages as their statutory wage claims, they are preempted, and the Court therefore should dismiss them.

### IV. PLAINTIFFS' ESTOPPEL CLAIM SHOULD BE DISMISSED

In addition to its pleading deficiency, Plaintiffs' equitable estoppel claim (Count X) fails because Plaintiffs misconstrue the nature of the estoppel doctrine. Equitable estoppel is a purely defensive concept: "It is available only for protection, and cannot be used as a weapon of assault. *Dickerson v. Colgrove*, 100 U.S. 578, 580-81 (1879) (emphasis added); *see also Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, No. 09-379 (W.D. Pa., filed July 20, 2009) (docket no. 118) ("estoppel serves as a shield and not a sword"). Numerous courts have recognized that because it cannot be used offensively, estoppel does not – indeed, cannot – give rise to a cause of action. *See Val-Land Farms, Inc., v. Third Nat'l Bank in Knoxville*, 937 F.2d 1110, 1115 (6th Cir. 1991) ("equitable estoppel does not create a cause of action under Tennessee law"); *Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, LLC*, 176 P.3d 737, 741 (Colo. 2007) ("the doctrine of equitable estoppel is not a cause of action at all, but rather a defensive doctrine"); *Hoye v. Westfield Ins. Co.*, 487 N.W.2d 838, 842 (Mich. 1992) ("the general rule is that equitable estoppel is a doctrine, not a cause of action . . . [and it] therefore provides no remedy such as damages"); *see also Adrian v. Mesirow Fin. Structured Settlements*, LLC, 2009 WL 2596508, *1 n.3 (D.P.R. 2009) ("Plaintiff seems to confuse theories of liability with other sorts of assertions in her amended complaint: she lists as [a] claim . . . 'equitable estoppel' [which is a] common theor[y] of defense."). By its very nature, Plaintiffs' estoppel "cause of action" fails to state a claim upon which relief may be granted, and for that reason it should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted in its entirety.

        Respectfully submitted,

        **CARITAS CHRISTI, CARITAS CHRISTI NETWORK SERVICES, INC., CARITAS CARNEY HOSPITAL, INC., CARITAS GOOD SAMARITAN MEDICAL CENTER, INC., CARITAS HOLY FAMILY HOSPITAL, INC., CARITAS NORWOOD HOSPITAL, INC., CARITAS SOUTHWOOD HOSPITAL, INC., CARITAS ST. ELIZABETH'S MEDICAL CENTER OF BOSTON, INC., CARITAS ST. JOHN OF GOD HOSPITAL, INC., NORWOOD HOSPITAL, SAINT ANNE'S HOSPITAL CORPORATION, RALPH DE LA TORRE, and RICHARD KROPP,**

        By their attorneys,

        /s/ Richard L. Alfred
        Richard L. Alfred, BBO #015000
        Krista Pratt, BBO #644741
        Barry Miller, BBO # 661596
        Sarah N. Turner, BBO #664488
        Seyfarth Shaw LLP
        World Trade Center East
        Two Seaport Lane, Suite 300
        Boston, MA 02210-2028
        (617) 946-4800

Dated: November 6, 2009

---

CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2009, a true copy of this document was filed through the Court's ECF system. I further certify that Plaintiffs' counsel are registered users of the ECF system designated to receive Notices of Electronic Filings generated by the ECF system in this matter.

/s/ Richard L. Alfred
Richard L. Alfred

BO1 16003932.5